# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of | No. 60282-2-II |
| NATALIA MOROZOVA, | |
| Appellant, | |
| and | |
| EDWARD CALLOW, | UNPUBLISHED OPINION |
| Respondent. | |

MAXA, P. J. – Natalia Morozova appeals (1) the trial court's denial of her CR 60(b) motion to vacate the court's orders regarding her former husband Edward Callow's child and spousal support obligations, and (2) the trial court's award of attorney fees to Callow based on a finding that she was intransigent. This appeal arises out of a Washington proceeding to enforce a California child and spousal support order in which the primary issue before the trial court was whether under the California order, Callow's income should be calculated using his law practice's gross income or net income.

The trial court's order regarding Callow's child and spousal support obligations found that those obligations were based on Callow's net income. The court subsequently denied Morozova's motion for reconsideration and awarded Callow $1,500 in attorney fees.

Morozova filed a CR 60(b) motion to set aside the trial court's order. In her CR 60(b) motion, Morozova argued that the trial court's orders should be vacated because (1) the court's ruling that Callow's obligations were based on net income was erroneous, (2) Callow's attorney engaged in fraud in her arguments to the court, (3) the orders were void because the court lacked subject matter jurisdiction to revise the California order, and (4) the court's imposition of $1,500 in attorney fees against her was erroneous. The trial court denied the motion and awarded Callow $5,000 in attorney fees for Morozova's intransigence.

We hold that the trial court (1) did not err when it denied Morozova's CR 60(b) motion to vacate the trial court's orders, but (2) erred when it awarded Callow attorney fees based on a finding that Morozova was intransigent. Accordingly, we affirm the trial court's denial of Morozova's motion to vacate, but we reverse the award of $5,000 in attorney fees to Callow.

FACTS

*Proceedings in California*

In 2008, a California court entered a judgment dissolving Callow and Morozova's marriage (the 2008 judgment). In a section labeled "Findings," the judgment stated that Callow's "last employment in Moscow, Russia, produced *income* at the rate of $23,333.00 per month." Clerk's Papers (CP) at 859 (emphasis added). The judgment also stated,

> **6.2 Support payable to Petitioner.** Commencing on the first day of the first month following Respondent's resumption of employment, Respondent is ordered to pay to Petitioner as and for spousal support the sum of five thousand five hundred dollars ($5,500.00) per month, it being understood that such number is based upon Respondent's immediately prior Moscow salary, and commencing with the Respondent's new employment, if Respondent's salary is less, Respondent shall

> pay proportionally less spousal support to be entered in a subsequent judgment. If the Respondent's salary is increased in the future, Respondent shall pay proportionally more spousal support to be entered in the subsequent judgment, such amount not to exceed five thousand five hundred dollars ($5,500.00) per month in the event the Respondent's salary reaches its pre-divorce level.

CP at 859.

In 2010, a California court entered an order addressing the amount of child and spousal support that Callow owed to Morozova (the 2010 order). The form order filled out by the California court addressing child support was labeled "FL-342." And the form order addressing spousal support was labeled "FL-343." The pages of the FL-343 bore stamps that read "002019" and "002020."

The 2010 order required Callow to pay $729 in child support and $600 in spousal support each month. In addition, it required Callow to pay 10.8 percent of his "income" in excess of $4,000 as additional child support. And the order required Callow to pay 23.6 percent of his "income" in excess of $4,000 in any month as additional spousal support. Both the child and spousal support orders reference an attached printout of a computer calculation of the parties' financial circumstances.

A document labeled "DissoMaster Report" appears alongside the 2010 order in the record. CP at 853. This document bears a stamp with the number "002023." On the DissoMaster Report's left column, it states that the father's self-employment income is $4,000. In the middle column, it states that the father's net (adjusted) income is $2,921 and that the presumed basic child support is $729. And in the right column, it states that the father's net spendable income is $2,191.

*Proceedings in Washington*

In 2008, after the marriage was dissolved, Callow moved to Washington. Morozova moved to Washington in 2011. That year, Morozova filed the 2008 judgment and the 2010 order from California in Pierce County Superior Court, seeking enforcement of the orders in Washington.

In March 2012, a commissioner of the superior court entered an order requiring Callow to pay Morozova a total of $98,616 in support and prejudgment interest for the period of June 1, 2010, to March 31, 2011. To calculate the amount Callow owed, the commissioner used the gross income received by Callow's law firm as Callow's income.

Subsequently, both parties moved the superior court to revise the commissioner's order. And Morozova filed several motions for discretionary review in this court related to the proceedings. In April 2012, the trial court entered an order staying the enforcement of the March 2012 support order until both parties' motions to revise and Morozova's appeals were resolved. Proceedings related to Morozova's appeals concluded in 2013.

In 2024, Morozova moved to lift the order staying enforcement of the March 2012 order. Ultimately, the trial court did not lift the stay because the motions to revise were unresolved. The parties filed supplemental briefing on Callow's motion to revise the commissioner's order.

Callow argued that the commissioner erred because it used his law practice's gross income rather than net income to calculate his support obligations. Callow relied on California Family Code (CFC) § 4058(a), which states "The annual gross income of each parent means income from whatever source derived,. . . and includes, but is not limited to, the following: . . . (2) Income from the proprietorship of a business, such as gross receipts from the business

*reduced by expenditures required for the operation of the business*." (Emphasis added.) And he

argued that California law did not support payment of prejudgment interest.

Morozova argued that the commissioner correctly calculated Callow's support payments

using Callow's law office's gross income. She relied on the California judge's statement at the

hearing on the 2010 order stating that Callow would owe a percentage "of [his] gross over

$4000" and the FL-343 form. CP at 102. Morozova also argued that CFC § 4058(a)(2) did not

apply because it was not mentioned in the 2008 judgment or contemplated in the negotiations

regarding that judgment.

In August, the trial court entered an order granting Callow's motion to revise the

commissioner's order (the August order). The court relied on CFC § 4058(a)(2) to conclude that

the income used to calculate Callow's support obligations would be based on his law office's

gross receipts reduced by expenditures. Using this data, the court revised the initial order to

require Callow to pay a total of $10,130.45 in child and spousal support for the period of June 1,

2010, to March 31, 2011, with a 10 percent per annum interest rate. In addition, the court

reversed the assessment of prejudgment interest.

Morozova moved for reconsideration of the August order. She argued that the trial

court's reliance on CFC § 4058(a)(2) was misplaced because it conflicted with the dissolution

judgment. Further, Morozova contended that the data used to calculate the revised support

amount was unsupported by the record, and the calculations used to ascertain the revised support

amount contained mathematical errors.

At oral argument on Morozova's motion to reconsider, Callow's attorney stated,

> So let's start with the marital settlement agreement. I think you were told that it
> used the word "income," and if I misstate that, I apologize. However, you have the
> marital settlement agreement. . . . Section 6.2 deals with this court, payable to

5

> Petitioner, and uses the same language further on in the agreement. . . . So first of all, it doesn't say "income," it says "salary."

Rep. of Proc. (RP) (Sept. 20, 2024) at 9-10.

Later, Callow's attorney quoted from a paragraph on the FL-343 and directed the court to a document Bates stamped "002019." However, Callow's attorney also stated that "[the FL-343] is attached as page 002023." RP (Sept. 20, 2024) at 13. After referencing the document on page 002023, Callow's attorney described a document with columns that began with self-employment income and net adjusted. Callow's attorney argued that this document showed that the California courts used net income to calculate his base child support, and that this meant the trial court should use net income to calculate his percentage based support obligations as well. Morozova argued in response that the "DissoMaster Report" that Callow's attorney cited should not be used to interpret the dissolution judgment.

On September 20, the trial court entered an order denying Morozova's motion to reconsider (the September order). The court's order stated that its earlier "ruling that the calculation is based on net income per CFC 4058[(a)](2) is correct." CP at 467. The order required Morozova to pay $1,500 in attorney fees to Callow for the motion.

On October 28, after the appeal deadline had passed, Morozova moved under CR 60(b) to vacate the August and September orders. She argued that the orders should be vacated because (1) the orders were entered pursuant to the trial court's mistaken application of CFC § 4058(a); (2) Callow's attorney defrauded the court by referring to the DissoMaster Report as the FL-343; (3) the orders were void because the court violated various provisions of the Uniform Interstate Family Support Act (UIFSA), chapter 26.21A RWC; (4) the orders conflicted with California case law and the provisions of UIFSA; and (5) the award of $1,500 in attorney fees violated Washington law.

The trial court denied Morozova's CR 60(b) motion to vacate the August and September orders. At the hearing on the motion, the court stated,

> [T]his matter has been before the court multiple times now. The arguments are the same, but they are being repackaged under a different label today. This is being called a motion to vacate, but it's essentially the same things that I've heard on prior motions.
>
> Procedurally, the problem with the motion today is that because the court has already rejected Ms. Morozova's arguments, she does not have a basis upon which to request vacation.
>
> I will make a specific finding today that there has been no fraud by [Callow's attorney].
>
> This practice of bringing the same arguments before a court multiple times, even after the court has ruled against the party, is intransigence, and so I am going to make an award of attorney fees for $5,000.

RP (Nov. 15, 2024) at 16. The trial court also stated, "I'm granting attorney[] fees under the equitable doctrines related to intransigence." RP (Nov. 15, 2024) at 18.

The trial court's written order stated that the statutory definition of income found in CFC § 4058(a)(2) applied to calculate Callow's income. The order also stated that "[t]he Court specifically finds there has been no fraud by [Callow's] attorney." CP at 638. The trial court ordered Morozova to pay $5,000 in attorney fees to Callow, "based on intransigence of Petitioner." CP at 638.

Morozova appeals the trial court's denial of her CR 60(b) motion to vacate, its finding that Callow's attorney did not engage in fraud, and the award of attorney fees to Callow.

## ANALYSIS

### A. CR 60(b) MOTION TO VACATE ORDERS

Morozova argues that the trial court erred in denying her CR 60(b) motion to vacate the August and September orders. We disagree.

7

1.   Legal Principles

Under CR 60(b), a party may obtain relief from "a final judgment, order, or proceeding" based on various grounds.  Morozova references four subsections of CR 60(b): subsection (1) "Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order"; subsection (4) "Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party"; subsection (5) "[t]he judgment is void"; and subsection (11) "[a]ny other reason justifying relief from the operation of the judgment."  The party seeking relief under CR 60(b) has the burden of showing that relief is warranted.  *Gates v. Homesite Ins. Co.*, 28 Wn. App. 2d 271, 278, 537 P.3d 1081 (2023).

We review a trial court's decision on a motion to set aside a default judgment for an abuse of discretion.  *VanderStoep v. Guthrie*, 200 Wn. App. 507, 518, 402 P.3d 883 (2017).  Discretion is abused if exercised based on untenable grounds or for untenable reasons.  *Id.*

2.   CR 60(b)(1)

Morozova argues that the trial court should have vacated its August and September orders under CR 60(b)(1) because they were entered pursuant to errors of law.  We disagree.

CR 60(b)(1) authorizes a trial court to vacate a judgment for mistakes in obtaining an order.  However, the uniform rule is that a mistake of law will not support vacation of a judgment under CR 60(b).  *Sangha v. Keen*, 4 Wn.3d 852, 869-70, 568 P.3d 1118 (2025); *Port of Port Angeles v. CMC Real Estate Corp.*, 114 Wn.2d 670, 673, 790 P.2d 145 (1990); *Burlingame v. Consol. Mines & Smelting Co.*, 106 Wn.2d 328, 336, 722 P.2d 67 (1986) ("Errors of law are not correctable through CR 60(b).").  " 'The exclusive procedure to attack an allegedly defective judgment is by appeal from the judgment, not by appeal from a denial of a CR 60(b) motion.' "

*Sangha*, 4 Wn.3d at 870 (quoting *Bjurstrom v. Campbell*, 27 Wn. App. 449, 451, 618 P.2d 533 (1980)).

Morozova contends that the trial court misapplied California divorce and contract law. But "CR 60(b) does not allow a litigant to . . . 'correct any errors of law into which [the court] may have fallen.' " *Sangha*, 4 Wn.3d at 869-70 (quoting *In re Est. of Jones*, 116 Wn. 424, 428, 199 P. 734 (1921)) (alteration in *Sangha*). Morozova should have sought relief from these alleged errors by appealing the August or September orders, not by filing a CR 60(b) motion to vacate those orders. *See Sangha*, 4 Wn.3d at 870.

Morozova's reliance on the United States Supreme Court's opinion in *Kemp v. United States*, 596 U.S. 528, 142 S. Ct. 1856, 213 L. Ed. 2d 90 (2022), is misplaced. In that case, the court considered whether the term "mistake" in Federal Rule of Civil Procedure 60(b)(1), which allows a party to seek relief from a final judgment for a mistake, includes a judge's errors of law. *Kemp*, 596 U.S. at 528. It concluded that a judge's error of law does constitute a mistake. *Id*. But Washington cases do not support interpreting a mistake under CR 60(b)(1) in the same way. *E.g.*, *Sangha*, 4 Wn.3d at 869-70.

Accordingly, we hold that the trial court did not abuse its discretion in denying Morozova's motion to vacate for errors of law.

3.    CR 60(b)(4)

Morozova argues that she was entitled to relief from the August and September orders under CR 60(b)(4) because Callow's attorney engaged in fraud to obtain the judgment. Similarly, she argues that the trial court erred when it entered a specific finding that Callow's attorney did not engage in fraud. We disagree.

9

CR 60(b)(4) authorizes a trial court to vacate a judgment for "[f]raud . . . , misrepresentation, or other misconduct of an adverse party." CR 60(b)(4) focuses on whether a judgment was fraudulently obtained, not whether the judgment was factually correct. *See In re Marriage of Bresnahan*, 21 Wn. App. 2d 385, 406, 505 P.3d 1218 (2022). The fraud or misrepresentation under CR 60(b)(4) must cause the entry of the judgment such that the losing party was " 'prevented from fully and fairly presenting its case or defense.' " *Id*. (quoting *In re Vulnerable Adult Pet. for Winter*, 12 Wn. App. 2d 815, 830, 460 P.3d 667 (2020)). The moving party has the burden of establishing they are entitled to relief under CR 60(b)(4) by clear and convincing evidence. *Bresnahan*, 21 Wn. App. 2d at 406.

Morozova claims that Callow's attorney engaged in fraud and misrepresentation when she (1) referred to the DissoMaster Report as the FL-343, (2) stated that the 2008 judgment did not include the word "income," (3) argued that the DissoMaster Report supported using his business's net income rather than gross income to calculate his support obligations, and (4) misrepresented California laws.

First, Callow's counsel misspoke when she equated the DissoMaster Report with the FL-343. Although associated with the FL-343, the DissoMaster Report is not that form. However, actual copies of those documents were part of the record that the trial court could review for itself. Morozova still was able to point out that Callow's attorney cited the DissoMaster Report and argue that the calculations in that document did not support his position. There is no indication that the court was defrauded or misled by the attorney's comment.

Second, although the section of the 2008 judgment entitled "Support payable to Petitioner" does not use the word income, the "Findings" section does. Callow's attorney directed the court only to the subsection that did not contain the word income. So technically she

misspoke. However, again a copy of this document was part of the record that the trial court could review for itself. And Callow's attorney's statement did not prevent Morozova from pointing out that the judgment did contain that word. There is no indication that the court was defrauded or misled by the attorney's comment.

In addition, the trial court relied on CFC § 4058(a)(2) to reach its conclusion in the September order. Whether or not the 2008 judgment contained the word "income" did not have any bearing on whether Callow's gross income should be calculated using his business's gross or net income. Therefore, Morozova failed to show both that the alleged conduct prevented her from fully and fairly presenting her case and that Callow's representation caused the entry of the judgment.

Third, Callow's attorney argued that the DissoMaster Report supported using his business's net income to calculate his percentage-based support obligations because the report used Callow's net income to calculate his base child support obligation. Morozova argues that this was misleading because it gave the trial court the false impression that the California court intended to use his net income to calculate his percentage based support obligations as well. But it was not misleading for Callow's attorney to argue that the California court's use of his net income in one part of the 2010 order supported his interpretation of the term income in another part of the order. And Morozova fails to identify any convincing authority indicating such argument was contrary to California law.

In addition, Morozova asserts that this argument was misleading because paragraph one of the FL-343 states "A printout of a computer calculation of the parties' financial circumstances is attached for all required items not filled out below" and the section addressing percentage

11

based support is filled out on the form. CP at 849. But this statement does not limit what evidence can be used to interpret ambiguous terms in the order.

Morozova also contends that this argument was misleading because calculations on a DissoMaster Report are used only to calculate child support and not spousal support under California law. Again, she fails to identify any authority to support this contention. And the FL-343 addressing spousal support explicitly references a computer calculation pertaining to the parties financial circumstances. There is no indication that the court was defrauded or misled by this argument.

Fourth, Morozova insists that the 2008 and 2010 judgments clearly define income as gross income and that Callow's attorney misrepresented California law by arguing otherwise. However, the sections addressing fraud in Morozova's briefing fail to identify any authority that shows that Callow's arguments misrepresented California law, or articulate how Callow's attorney misrepresented California authority. We reject this argument.

Regarding the trial court's finding that Callow's attorney did not defraud the court, Morozova contends that substantial evidence does not support that finding. But in the context of her CR 60(b)(4) motion, the burden was on Morozova to show Callow's attorney had engaged in fraud by clear and convincing evidence. *Bresnahan*, 21 Wn. App. 2d at 406. It was reasonable for the trial court to conclude that a few technically inaccurate but irrelevant statements made by Callow's attorney did not constitute fraud. Therefore, we conclude that the trial court did not err when it entered a specific finding that Callow's attorney did not engage in fraud.

Accordingly, we hold that Morozova failed to establish that the August and September orders were obtained pursuant to fraud, misrepresentation, or misconduct.

4.    CR 60(b)(5)

Morozova argues that the trial court's order is void because it lacked jurisdiction to modify the California support orders. We disagree.

Under CR 60(b)(5), a judgment can be set aside if it is void. A judgment is void if the issuing court lacks subject matter jurisdiction over the claim. *Gates*, 28 Wn. App. 2d at 279.

Article IV, section 6 of the Washington Constitution states that superior courts have jurisdiction "in all cases . . . in which jurisdiction shall not have been by law vested exclusively in some other court." This grant of jurisdiction is broad, and exceptions to it are read narrowly. *In re Marriage of Schneider*, 173 Wn.2d 353, 360, 268 P.3d 215 (2011).

Morozova relies on the UIFSA. RCW 26.21A.150(2) states, "A tribunal of this state may not modify a spousal support order issued by a tribunal of another state or a foreign country having continuing, exclusive jurisdiction over that order under the law of that state or foreign country." When the legislature enacted UIFSA, it "limited the superior courts' *authority* – not the superior courts' *jurisdiction* – to modify another state's" support orders. *Schneider*, 173 Wn.2d at 360. The court also stated that when a trial court that modifies a child support order in violation of UIFSA, it "*commits an error of law but does not exceed its subject matter jurisdiction.*" *Id.* at 362 (emphasis added). Although the court in *Schneider* addressed UIFSA's provisions relating to child support, we conclude that its reasoning applies equally in a proceeding involving spousal support.

Callow argues that the trial court merely interpreted the California order and did not modify it. But even if the trial court here granted relief beyond the scope of its authority under UIFSA, it would amount to an error of law, not an action that exceeded its subject matter

jurisdiction. *See id*. And again, CR 60(b) is the wrong vehicle for addressing errors of law. *Sangha*, 4 Wn.3d at 869-70.

Accordingly, we hold that Morozova failed to establish that the judgment was void for lack of subject matter jurisdiction.

5.    CR 60(b)(11)

Morozova argues that the award of $1,500 in attorney fees to Callow in the September order should have been vacated under CR 60(b)(11) because it violates RCW 26.21A.260. We disagree.

CR 60(b)(11) states that the court may grant relief from a final judgment for "[a]ny other reason justifying relief from the operation of the judgment." CR 60(b)(11) is " 'intended to serve the ends of justice in extreme, unexpected situations and when no other subsection of CR 60(b) applies.' " *Dzaman v. Gowman*, 18 Wn. App. 2d 469, 478, 491 P.3d 1012 (2021) (quoting *Shandola v. Henry*, 198 Wn. App. 889, 895, 396 P.3d 395 (2017)). This section " 'applies to extraordinary circumstances involving irregularities extraneous to the proceeding.' " *Dzaman*, 18 Wn. App. 2d at 478 (quoting *Shandola*, 198 Wn. App. at 895).

Morozova argues that the September attorney fee award should have been vacated under CR 60(b)(11) because RCW 26.21A.260(1) and (2) do not permit an award of attorney fees against the petitioner or obligee. But this issue would constitute a legal error. And again, a legal error is not a basis to vacate an order under CR 60(b). *E.g.*, *Sangha*, 4 Wn.3d at 869-70.

Accordingly, we hold that CR 60(b)(11) did not require the trial court to vacate the trial court's September order.

6.    Summary

Morozova failed to establish that she was entitled to relief under any of the sections of CR 60(b) that she referenced.  Therefore, we hold that the trial court did not abuse its discretion when it denied her CR 60(b) motion to vacate.

B.    AWARD OF ATTORNEY FEES

Morozova argues that the trial court erred in awarding Callow $5,000 in attorney fees based on her intransigence in its November order.  We agree.

1.    Legal Principles

A court may award attorney fees for costs of litigation only when such an award is authorized by contract, statute, or recognized ground of equity.  *Union Bank, NA v. Blanchard*, 194 Wn. App. 340, 364, 378 P.3d 191 (2016).  A party's intransigence is an equitable basis for awarding attorney fees.  *Bresnahan*, 21 Wn. App. 2d at 411.  "Determining intransigence is necessarily factual, but may involve foot-dragging, obstructing, filing unnecessary or frivolous motions, refusing to cooperate with the opposing party, noncompliance with discovery requests, and any other conduct that makes the proceeding unduly difficult or costly."  *In re Marriage of Wixom*, 190 Wn. App. 719, 725, 360 P.3d 960 (2015).

We review an award of attorney fees for intransigence for an abuse of discretion.  *In re Marriage of Kaplan*, 4 Wn. App. 2d 466, 488, 421 P.3d 1046 (2018).

2.    Analysis

First, Morozova argues that the trial court's award of fees was an error because it was contrary to RCW 26.21A.260(1) and (2).  Whether a trial court has authority to award attorney fees under a statute is an issue that we review de novo.  *Niccum v. Enquist*, 175 Wn.2d 441, 446, 286 P.3d 966 (2012).

RCW 26.21A.260(1) states, "The petitioner may not be required to pay a filing fee or other costs." And RCW 26.21A.260(2) states, "[t]he tribunal may not assess fees, costs, or expenses against the obligee . . . , *except as provided by other law*." (Emphasis added.) Here, the trial court based its sanctions award on its inherent authority to fashion equitable remedies, not on RCW 26.21A.260. RCW 26.21A.260(2) permits a trial court to assess fees against an obligee "as provided by other law." The trial court's inherent authority to address litigant intransigence provided a basis in "other law" to assess fees. Therefore, RCW 26.21A.260 did not foreclose the trial court's award of sanctions.

Second, Morozova argues that the trial court's finding of intransigence was an error. The trial court found that Morozova was intransigent because she reasserted the same arguments three times, repackaged as different motions. Morozova argued that CFC § 4058(a)(2) did not apply for the same reasons in (1) her opposition to Callow's motion to revise, (2) her motion to reconsider the August order, and (3) her motion to vacate the August and September orders.

However, Morozova had a right under CR 59 to file a motion for reconsideration. So that motion cannot be the basis of an intransigence finding. The only plausible basis for an intransigence finding is the single CR 60(b) motion. Morozova did repeat some of her same arguments about gross income and the inapplicability of CFC § 4058(a)(2). But she also raised new arguments in her motion to vacate, including that the judgment was void for lack of jurisdiction and the trial court erred in awarding $1,500 in attorney fees.

The common understanding of intransigence involves more than filing a single motion. And arguably, Morozova was required to raise the previously rejected arguments to avoid a court ruling that she had abandoned or waived the arguments by not raising them in the latest motion.

Accordingly, we hold the trial court abused its discretion when it found that Morozova was intransigent and reverse the award of $5,000 in attorney fees.

## C.      ATTORNEY FEES ON APPEAL

Callow requests attorney fees on appeal under RAP 18.1(a) based on Morozova's intransigence, and under RAP 18.9(a) based on his assertion that Morozova's appeal is frivolous. We deny Callow's request for attorney fees.[1]

### 1.    Legal Principles

RAP 18.1(a) allows this court to award attorney fees on appeal if the party is entitled to attorney fees under applicable law. As discussed above, a party's intransigence is an equitable basis for awarding attorney fees. *Bresnahan*, 21 Wn. App. 2d at 411. And an award of attorney fees based on intransigence may be appropriate if a party's appeal " 'amounts to little more than an effort to carry on with the same efforts which caused [them] to lose credibility with the trial court.' " *Id*. (quoting *In re Marriage of Sievers*, 78 Wn. App. 287, 312, 897 P.2d 388 (1995)) (alteration in *Bresnahan*).

RAP 18.9(a) authorizes the appellate court to impose attorney fees as sanctions if a party "files a frivolous appeal." An appeal is frivolous if, considering the entire record, we determine that the appeal presents no debatable issues and is completely without merit. *Wash. Election Integrity Coal. United v. Schumacher*, 28 Wn. App. 2d 176, 206, 537 P.3d 1058 (2023). Simply because an appeal lacks merit does not mean that sanctions are appropriate. *Id.*

### 2.    Analysis

First, Callow requests attorney fees for Morozova's intransigence. Morozova had the right to appeal the trial court's denial of her motion to vacate. RAP 2.2(a)(10). And we conclude

---

[1] Morozova also requests attorney fees for her appeal. We decline this request.

that Callow has failed to show that Morozova has been intransigent in this court. Therefore, we decline to award fees on this basis.

Second, Callow requests attorney fees because Morozova's appeal is frivolous. Even if Morozova's CR 60(b) arguments are unmeritorious, her challenge to the trial court's $5,000 attorney fee award is not frivolous because we are reversing that award. "Raising at least one debatable issue precludes finding that the appeal as a whole is frivolous." *Advocs. for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 170 Wn.2d 577, 580, 245 P.3d 764 (2010). Because the appeal was not frivolous in its entirety, we will not award attorney fees as sanctions. *See id*. at 581.

Accordingly, we decline to award attorney fees to Callow.

CONCLUSION

We affirm the trial court's denial of Morozova's motion to vacate but reverse the award of $5,000 in attorney fees to Callow.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

LEE, J.

CHE, J.